# MISSOURI PACIFIC RAILROAD COMPANY *v.* PORTER ET AL.

### ERROR TO THE SUPREME COURT OF ARKANSAS.

No. 107.   Submitted January 11, 1927.—Decided February 21, 1927.

1. Section 1(6) of the Act to Regulate Commerce, requiring carriers to establish and enforce just and reasonable regulations affecting " the issuance, form and substance " of bills of lading, applies to provisions in bills of lading affecting liability of railroads for loss of property received by them for transportation over an interstate inland route to a seaport for delivery to a foreign vessel for ocean carriage to a non-adjacent foreign country.   P. 343.

2. This is a general regulation by Congress broad enough to include stipulations in bills of lading exempting carriers from liability for loss of such shipments by fire, not due to the carriers' negligence. P. 345.

3. A state law forbidding such stipulations is therefore as applied to such shipments invalid in view of the occupation of the field by Congress.   P. 346.

168 Ark. 22, reversed.

ERROR to a judgment of the Supreme Court of Arkansas which affirmed a judgment against the railroad for loss of goods by fire, in favor of Porter and other shippers.

*Messrs. Thos. T. Railey, Edward J. White, E. B. Kinsworthy,* and *Robert E. Wiley,* for the plaintiff in error. submitted.

*Mr. J. C. Marshall* for the defendant in error, submitted.

MR. JUSTICE BUTLER delivered the opinion of the Court.

October 21, 1920, at Earle, Arkansas, defendants in error delivered to plaintiff in error seventy-five bales of cotton for transportation to Liverpool, England. The carrier issued to the shippers an export bill of lading in two parts: the first covered the inland haul from Earle to Brunswick, Georgia, designated as port A, and the second covered the ocean carriage from Brunswick to Liverpool, designated as port B. The inland route specified was over the lines of railroad of plaintiff in error, the Mobile and Ohio, and the Atlanta, Birmingham and Atlantic. The inland rate for the railroads named was 98.5 cents per hundred pounds. The ocean transportation was to be by the Leyland Line for the rate of $1.95. The bill of lading contained, as applicable in respect of the service and delivery at Brunswick, a provision that, " No carrier or party in possession of  . . .  the property, herein described, shall be liable for any loss thereof  . . .  by fire  . . ." After the bill of lading was issued, while the cotton was on the cars of the carrier and before they were moved from Earle, it was destroyed by a fire originating at the compress and which was not set by plaintiff in error. Sections 843 and 844, Crawford and Moses' Digest of the Statutes of Arkansas, declare that it is unlawful for any railroad to enter into an agreement with any shipper for the purpose of limiting or abrogating its statutory and common law duties or liability as a common carrier; that all agreements made for that purpose and any rule or regulation limiting the common law rights of shippers are void. Defendants in error brought this

action in the Circuit Court of Pulaski County, Arkansas, to recover the value of the cotton. Plaintiff in error contended—as it here insists—that these provisions of the Arkansas statute do not apply to the shipment in question; and that, if held to be applicable, they contravene the laws of the United States regulating interstate and foreign commerce. The Circuit Court applied the statute, and gave judgment for the shippers. The carrier took the case to the Supreme Court of the State, and there it was held that the Acts of Congress regulating bills of lading apply only to interstate commerce and to shipments from a point in the United States to an adjacent foreign country, and do not evince an intention to regulate bills of lading for shipments from a point in the United States to non-adjacent foreign countries. 168 Ark. 22. The case is here on writ of error allowed by the chief justice of that court. § 237, Judicial Code.

There is no claim that the loss was caused by any fault or negligence of the carrier; and, if the Arkansas statute does not apply to the shipment, the clause in the bill of lading exempting the carrier from liability is valid. *Cau* v. *Texas & Pacific Ry. Co.*, 194 U. S. 427. The power of Congress under the commerce clause to regulate bills of lading in respect of such shipments is not questioned; and, if it has entered the field of such regulation, the state statute is thereby superseded. The Interstate Commerce Act extends to the plaintiff in error and to the other railroads named in the bill of lading over which the cotton was to have been transported from Earle, Arkansas, to the port of Brunswick, Georgia, and it also extends to the interstate transportation over the inland route constituting a part of the movement in foreign commerce. § 1 (1), (2) and (3). 41 Stat. 474. Among other things, the Act requires all carriers subject to it to establish and enforce just and reasonable regulations affecting the issuance, form and

substance of bills of lading. § 1 (6). 41 Stat. 475. It directs the Interstate Commerce Commission to keep informed as to the manner and method in which the busi- ness of carrier is conducted, and " to execute and enforce the provisions of " the Act. § 12. 25 Stat. 858. It provides that whenever; after hearing, the commission shall be of opinion that any " regulation or practice whatsoever " of the carriers is unjust or unreasonable it may determine and prescribe what is just, fair and reasonable, and may. make an order requiring the carriers to observe the regulation or practice prescribed. § 15. 41 Stat. 484. The Act requires a carrier receiving property for transportation from a point in one State to a point in another State or from a point in the United States to a point in an adjacent foreign country to issue bills of lading therefor; and, to some.extent, it regulates their provisions affecting the liability of carriers. § 20 (11)—Carmack and Cummins Amendments. 38 Stat. 1197. Section 25, added by the Amendment of February 28, 1920, 41 Stat. 497, was enacted to promote the business of common carriers by water in foreign commerce whose vessels are registered under the laws of the United States; it applies to shipments from points in the United States to nonadjacent foreign countries and requires the commission to do certain things in furtherance and regulation thereof. Subdivision 4 of that section requires a railroad carrier receiving a shipment to be delivered to such a vessel for further transportation to issue a through bill of lading which shall state separately the amount to be paid for railroad transportation, for water transportation and in addition, if any, for port charges. It requires the railroad as a part of its undertaking to deliver the shipment to the vessel and provides that it will not be liable after such delivery. The commission is expressly empowered, in such manner as will preserve for the carrier by water the protection of limited liability provided by law, to pre-

scribe the form of such bills of lading. The section does not apply to shipments in such commerce where the ocean carriage is by a foreign vessel. The record does not disclose whether the vessel on which the cotton was to have been carried was registered under the laws of the United States; and, in favor of the shippers, we assume it was a foreign vessel.

The question is whether Congress has entered upon the regulation of provisions in bills of lading affecting liability of railroads for loss of property received by them for transportation over an interstate inland route to a seaport for delivery to a foreign vessel for ocean carriage to a non-adjacent foreign country. All of the provisions referred to were in force when the cotton was delivered to plaintiff in error. No Act of Congress or order of the commission prescribed a form of bill of lading for this shipment. Cf. *In the Matter of Bills of Lading,* 64 I. C. C. 347, *et seq.; Alaska S. S. Co.* v. *United States,* 259 Fed. 713; same case, 253 U. S. 113. The defendants in error rightly say that the Carmack Amendment, the Cummins Amendment, or § 25 does not apply to such a shipment. But that does not sustain their contention that Congress has not evinced an intention to regulate bills of lading for transportation such as is here involved. Section 1 (6) extends to all carriers and to all transportation subject to the Act; it prescribes a general rule applicable to all regulations and practices affecting the form or substance of bills of lading in order that they may be just and reasonable. And the commission is empowered and directed to enforce the rule.

The general regulation of the " issuance, form, and substance " of bills of lading is broad enough to cover contractual provisions, like the one involved in this case, exempting railroads from liability for loss of shippers' property by fire. Congress must be deemed to have determined that the rule laid down and the means provided

to enforce it are sufficient and that no other regulation is necessary. Its power to regulate such commerce and all its instrumentalities is supreme; and, as that power has been exerted, state laws have no application. They cannot be applied in coincidence with, as complementary to or as in opposition to, federal enactments which disclose the intention of Congress to enter a field of regulation that is within its jurisdiction. *Napier* v. *Atlantic Coast Line Ry. Co.*, 272 U. S. 605; *Oregon-Washington Co.* v. *Washington*, 270 U. S. 87, 102; *Penna. R. R. Co.* v. *Pub. Service Comm.*, 250 U. S. 566; *Charleston & Car. R. R. Co.* v. *Varnville Co.*, 237 U. S. 597, 604; *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 505; *Nor. Pac. Ry.* v. *Washington*, 222 U. S. 370, 378; *Prigg* v. *Pennsylvania*, 16 Pet. 539, 617, 618; *Houston* v. *Moore*, 5 Wheat. 1, 21, 22.

*Judgment reversed.*